UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DAVID THOMAS, III,**

    Plaintiff,

v.                                            Case No. 8:20-cv-1714-VMC-NPM

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff David Thomas seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 20),[1] and the parties filed an amended joint memorandum (Doc. 31). As discussed in this report, the decision of the Commissioner should be affirmed.

**I.    Eligibility for Disability Benefits and the Administration's Decision**

    **A.    Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the corresponding page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.     Factual and procedural history

On November 20, 2018, Thomas applied for disability insurance benefits and supplemental security income. (Tr. 243, 252). He asserted an onset date of June 12, 2015, alleging disability due to the following: anxiety; depression; crushed pelvis; urethra damage; prostate damage; bladder damage; low back pain; and leg pain. (Tr. 54, 76). As of the alleged onset date, Thomas was 33 years old with some college education. (Tr. 57, 75, 281). He previously worked as a janitor and a mirror and glass

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

installer. (Tr. 69, 282).

On behalf of the administration, a state agency [5] reviewed and denied Thomas's application initially on January 28, 2019, and upon reconsideration on March 7, 2019. (Tr. 105-106, 145-146). At Thomas's request, Administrative Law Judge (ALJ) Donald Smith held a hearing on October 31, 2019 (Tr. 52-74, 172), and on November 20, 2019, the ALJ issued a decision finding Thomas not disabled. (Tr. 28-46). Thomas's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Thomas then brought the matter to this court, and the case is ripe for judicial review.

### C.     The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. §§ 404.1503(a), 416.903(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion

throughout the process. *See* 20 C.F.R. §§ 404.1512, 416.912 (providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Thomas had not engaged in substantial gainful activity since the alleged onset date. (Tr. 33). At step two, the ALJ characterized Thomas's severe impairments as: spinal disorder with sciatica; pelvic fractures; erectile dysfunction; depression; anxiety; somatic disorder; and posttraumatic stress disorder. *Id.* At step three, the ALJ determined Thomas did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 34).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours per day; sit six hours per day; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; avoid vibration, hazardous machinery and heights; can perform unskilled work with a Specific Vocational Preparation (SVP) of one or two and a general educational development (GED) reasoning level of one or two; cannot

perform fast-paced production or quota driven work, such as assembly lines; and can maintain attention and concentration for two hours, but then requires a 10 minute break.

(Tr. 35).

Consequently, at step four, the ALJ determined that Thomas is not capable of performing his past relevant work because the functional requirements exceed his RFC. (Tr. 44). At step five, the ALJ found Thomas could perform other work that exists in significant numbers in the national economy. (Tr. 45). In support, a vocational expert testified that three occupations represent the kinds of jobs an individual of Thomas's age, education, work experience, and RFC can perform:

- Produce Sorter (DOT #529.687-186), light, unskilled, SVP 2, GED reasoning level 1, 109,000 jobs nationally;

- Laundry Folder (DOT #369.687-018), light, unskilled, SVP 2, GED reasoning level 2, 193,000 jobs nationally; and

- Small Products Assembler (DOT #706.684-022), light, unskilled, SVP 2, GED reasoning level 2, 210,000 jobs nationally.

(Tr. 45).[6]

Thus, for purposes of the Act, the ALJ concluded Thomas was not under a

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

disability from June 12, 2015, the alleged onset date, through November 20, 2019, the date of decision. (Tr. 46).

## II. Analysis

Thomas's appeal presents the following issues for review:

1) whether the ALJ properly considered Thomas's desire to return to work;

2) whether the ALJ properly evaluated opinion evidence; and

3) whether the evidence supports an alternative conclusion that Thomas's RFC was so limited that he could not work.

### A. Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v.*

*Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B. The return-to-work evidence was relevant and is not subject to reassessment on review

After his alleged onset date, Thomas looked for work in the fields of soldering and home health care. (Tr. 774). He even completed a class and obtain a certification to perform soldering work. (Tr. 783, 786). But Thomas argues on appeal that it was somehow unfair for the ALJ to account for Thomas's efforts to engage in work activity. Thomas's arguments on this score essentially imply that it is for Thomas to decide which jobs he can and cannot do. Not so. The RFC determination is within the exclusive province of the ALJ, and not even a physician's opinion about Thomas's functional limits is controlling. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter

reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive").

Moreover, it would be improper for the ALJ to turn a blind eye toward Thomas's efforts to obtain work. Such evidence is relevant to the ALJ's analysis of both Thomas's subjective complaints and of the intensity and persistence of Thomas's alleged limitations. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). And the ALJ is to consider the record as a whole when formulating the RFC. 20 C.F.R. §§ 404.1545(a), 416.945(a). Finally, Thomas's arguments invite us to second-guess the ALJ's credibility determinations and to re-weigh the evidence. But this is beyond the province of our review. *See Buckwalter*, 997 F.3d at 1132. In sum, Thomas's points of error about the return-to-work evidence are meritless.

### C. The ALJ properly articulated substantial evidence for finding medical opinions unpersuasive

Thomas treated with psychologist Wendy Sims, Ph.D. On January 17, 2019, Dr. Sims completed a mental impairment questionnaire. (Tr. 816-820). She opined, in part, that Thomas had moderate difficulty in maintaining social functioning, and frequent deficiencies in concentration, persistence or pace. (Tr. 820). She also stated that Thomas would be absent from work about three times a month (Tr. 819).

Thomas also treated with Marc S. Kallins, M.D., a pain specialist. On August 28, 2019, Dr. Kallins completed a medical source statement. (Tr. 935-938). He opined, in part, that Thomas's symptoms frequently interfere with attention and

concentration needed to perform simple work tasks. (Tr. 936). Kallins also opined Thomas could sit, stand, or walk for only 15 minutes at a time. (Tr. 936-937). Kallins stated that Thomas would be absent more than four days per month. (Tr. 938). Thomas argues the ALJ improperly found these opinions less than persuasive.

For disability cases filed on or after March 27, 2017—such as this one—the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work or adapt to work-related conditions. *See* 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Furthermore, medical opinions related to claims filed on or after March 27, 2017, are subject to a different assessment about their persuasiveness rather than their weight. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

These opinions are assessed for their persuasiveness based on the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tends to support or contradict the medical opinion. 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c). Indeed, statements by medical practitioners

about the nature and severity of a claimant's impairments, medical history, clinical findings, or diagnosis merely constitutes "other medical evidence" of record. 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

A medical practitioner's assessment about potential absenteeism is not a "medical opinion;" just "other medical evidence." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3). So the ALJ was not required to discuss the physicians' references to potential absenteeism, let alone discuss them in his written decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (stating "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Moreover, the ALJ is only required to articulate the persuasiveness of the collective opinions of a single medical source as a whole. As the governing regulations state: "We are not required to articulate how we considered each medical opinion … from one medical source individually." Instead, when a medical source provides multiple medical opinions, the administration will articulate how it "considered the medical opinions … from that medical source together in a single analysis …." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

Here, the ALJ properly considered Dr. Sims's medical opinions. The ALJ explained that Sims's opinions were not supported by his own treatment notes. The ALJ discussed Dr. Sims's treatment notes indicating she (1) urged Thomas to volunteer with boys and girls clubs in preparation of looking for work, (2) discussed

Thomas's ability to start and complete soldering training, (3) talked about Thomas's willingness to try part-time work, (4) encouraged Thomas to continue to seek out work, and (5) indicated Thomas was trying to find a job within his restrictions while having her complete his Social Security Disability paperwork. (Tr. 41-43, 762, 777, 780, 783, 786, 804, 807,813). Moreover, the ALJ discussed how Sims's opinions were not consistent with the other evidence in record. (Tr. 43). The ALJ discussed records from Dr. Sylvester showing Thomas's various therapy sessions in the record show "some problems with motivation and initiative, but consistent reports of attempts or actions related to finding work or obtaining training in order to start a new career." (Tr. 42, 726-815). These "problems with motivation and initiative," echo what Thomas contends he reported to Sims, but these reports do not constitute medical opinions or otherwise establish Thomas was disabled. Further, the ALJ noted a lack of consistency in Sims's opinions about Thomas's social functioning as he was living with his parents and sister and spent time with his two children, who apparently lived with their mother. (Tr. 43, 56).

The ALJ also properly articulated reasons for finding Dr. Kallins's opinions unpersuasive. The ALJ considered Kallins's opinions inconsistent with the record evidence, having already observed that Dr. Bolhofner, in June 2016, indicated Thomas was already capable of light work and Dr. Infante, in April 2017, opined Thomas was only limited to lifting and carrying less than 25 pounds, pushing and

pulling less than 50 pounds, no climbing ladders, and no repetitious squatting (Tr. 37, 40, 407, 428-29). In light of the ALJ's thorough discussion of the record, Thomas fails to establish any substantial deterioration in his condition following his pelvic and urethral surgeries and procedures that would be consistent with Dr. Kallins's excessive limitations (Tr. 36-44). Further, the ALJ found that Dr. Kallins's opinions were not supported by his own treatment records, which the ALJ noted as indicative that, in May and July 2019, over two years after Dr. Bolhofner's and Dr. Infante's opinions, Thomas "was able to move from sit to stand without problem, walked with a slight limp on right heel strike, had no lumbar tenderness, and had mild pain with right straight leg raise (Tr. 43, 929-34). Thus, the ALJ properly articulated substantial evidence for finding these opinions less than persuasive.

      **D.**    **We must decline Thomas's invitation to re-weigh the evidence in favor of a more restrictive RFC**

Thomas argues he was incapable of working for at least some 12-month portion of time after his alleged onset, and that the ALJ erred by not reaching this conclusion. (Doc. 31, pp. 22-28). For a host of reasons, this alleged point of error must be rejected.

At the outset, this argument fails because it turns the burden of proof on its head. Thomas was injured at work in June 2015, and Thomas argues the ALJ—in order to deny benefits—had to prove that Thomas could return to work by June 2016.

But the burden to prove an inability to engage in substantial gainful activity always rests with the claimant. *See* 20 C.F.R. §§ 404.1512, 416.912.

Thomas also complains that the ALJ's decision did not cite a host of evidence about Thomas's path to recovery from his urethral injury. But, as mentioned above, the ALJ need not cite and discuss every item of evidence. Besides, the ALJ's decision indicates a thorough review of the evidence.

Thomas also points to the frequency of his interactions with physicians and medical facilities. But the number of medical visits is not an appropriate consideration when assessing functional limitations. 20 C.F.R. §§ 404.1545, 416.945; *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017).

Thomas focuses on issues related to his urethral injury to argue he was unable to work, but substantial evidence supports the ALJ's contrary conclusion. Needing to wear diapers does not preclude work. *See Estes v. Comm'r of Soc. Sec.*, No. 2:20-cv-225-JLB-NPM, 2021 WL 4822599, *8 (M.D. Fla. Aug. 2, 2021) (claimant not disabled even though he was prescribed incontinence briefs), *report and recommendation adopted*, 2021 WL 3910134 (Sept. 1, 2021). And Thomas's voiding dysfunction requiring daily self-catheterization was temporary. In June 2017, Thomas was noted to have a good stream when his bladder could fill up. (Tr. 474). And in June 2018, a cystoscopy revealed Thomas's condition had improved and stabilized such that his physician was prepared to procced with erectile

dysfunction treatment. (Tr. 442). Moreover, Thomas's physicians repeatedly released him for work. (Tr. 413 (November 12, 2015); Tr. 37, 407-409 (June 21, 2016); Tr. 40, 427 (June 14, 2017)).

In sum, Thomas asks us to re-weigh the evidence to arrive at a more restrictive RFC. But judicial review is not a vehicle for re-weighing the evidence.

### III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court should be directed to enter judgment, terminate any pending motions and deadlines, and close the case.

Respectfully recommended on August 4, 2022.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**